**HOUSMAN v. COMMISSIONER OF INTERNAL REVENUE.**

**No. 288.**

Circuit Court of Appeals, Second Circuit.

July 26, 1939.

L. HAND, Circuit Judge, dissenting.

974

Proskauer, Rose & Paskus, of New York City (Joseph M. Proskauer, David Katz, and Wilbur H. Friedman, all of New York City, of counsel), for petitioner.

James W. Morris, Asst. Atty. Gen., and Sewall Key and F. E. Youngman, Sp. Assts. to Atty. Gen., for respondent.

Before L. HAND, CHASE, and PATTERSON, Circuit Judges.

PATTERSON, Circuit Judge.

The Commissioner of Internal Revenue ruled that $66,093.54 paid by the petitioner to her son William in 1933 was subject to gift tax under the Revenue Act of 1932 and gave notice of tax deficiency of $2,490.80. The petitioner took the matter to the Board of Tax Appeals, claiming that the payment was not a gift but was made as the result of a trust impressed on her income and also as the result of an enforceable agreement between her and her son. The Board held that the payment was subject to gift tax. The petitioner has brought the case here for review. She is content with the Board's findings of fact, and the evidence has not been made part of the record. We take the facts from the findings.

The petitioner is the widow of one Bernheimer who died in 1913, a resident of New York. His will, made in 1909, was admitted to probate in due course. By it he left a trust of $250,000 for each of his two infant sons and the residue in trust for the petitioner for life with remainder to the sons. The residuary estate at the time of his death amounted to nearly $4,000,000. Before making the will in 1909 he told the petitioner, his wife, of the provisions he was making for his sons, and said that he had made only a small provision for them because they were very young and he did not know how they would come along. In the words of the Board: "He further said that he wanted them to have what they needed and that he left it entirely up to petitioner to do the right thing by the boys. Petitioner promised her husband that she would do this." What his wealth amounted to at the time we have no means of knowing.

The older son died in 1924. The younger son William received $12,500 a year as income from the trust for his benefit. From 1918 on he also received regular payments from the petitioner, the amounts of which are not stated. He made demands for additional money, some of which his mother met and some of which she rejected. She told William of the talk with his father, but insisted that her judgment must govern as to the amount. So matters went until 1928 when William, who was living in France, returned to this country and told one Meyer, who was in charge of the family's financial matters, that he intended to employ counsel to try to break his father's will; that he did not believe that it was his father's intention to have his son not knowing from day to day whether he could afford a thing or not and living without a feeling of security. He demanded one-third of the estate income, the income then being $450,000 a year. He made like demands on the petitioner's lawyer. The lawyer advised a settlement. The petitioner expressed her willingness to pay him $100,000 a year, in addition to a birthday present and a Christmas present of $10,000 each. Provision was made for a reduction of the sum to be paid, if the income materially diminished. The son agreed. Such payments were made in 1929, 1930 and 1931. The income of the estate having declined in 1932, the petitioner told her son that in accordance with the agreement she would reduce her payments to $60,000 a year. The payment in 1933 was $66,093.54. William did not report the payments received from the petitioner as taxable income, and the petitioner did not deduct them from her income in her income tax returns.

By the Revenue Act of 1932, § 501, 26 U.S.C.A. § 550 and note, a tax is imposed on transfers made by gift after the date of the act. Section 503, 26 U.S.C.A. § 552, provides that where property is transferred for less than adequate and full consideration in money or money's worth, the amount by which the value of the property transferred exceeds the consideration shall be deemed a gift for tax purposes.

The petitioner's primary point is that the talk between her and her husband in 1909 raised a constructive trust in her son's favor, operative against her income from the residuary estate. From this premise it is argued that the payments

made by her to her son were not gifts but represented the son's interest in his father's estate. Reliance is placed on the rule that if a testator is induced to make a will by a promise of the legatee to devote his legacy to a certain purpose, a secret trust is created which equity will enforce against the legatee. Matter of O'Hara's Will, 95 N.Y. 403, 47 Am.Rep. 53; Amherst College v. Ritch, 151 N.Y. 282, 45 N.E. 876, 37 L.R.A. 305; Restatement of Trusts, section 55. The Board found that the father did not intend to create a trust in favor of the son, and held that the case was not one of constructive trust. We are of the same opinion. All that happened was that the decedent, in explaining to the petitioner that he was leaving relatively small trusts for his sons because they were very young and he did not know how they would come along, said that he wanted the sons to have what they needed and that he left it entirely to her to do "the right thing by the boys", to which she assented. We know of no case in which a constructive trust has been built and the provisions of a will upset on a talk as casual and indefinite as this. We dare say that a talk of this sort commonly takes place when a man with a wife and minor children makes a will leaving all or the bulk of his estate to his wife. There is no reason to believe that the decedent intended to impose an enforceable trust, no reason to believe that he would have changed his contemplated dispositions but for the petitioner's assent to what he said, and both of these elements must plainly appear for the courts to impress a constructive trust on the legatee. For all that is shown, the decedent was merely giving the motives that actuated him in making his testamentary dispositions and leaving it entirely to the petitioner's discretion to give something more to the boys. There was no constructive trust. Orth v. Orth, 145 Ind. 184, 42 N.E. 277, 44 N.E. 17, 32 L.R.A. 298, 57 Am.St.Rep. 185; Hermann v. Hermann, 193 Iowa 1201, 188 N.W. 806; Neagle v. McMullen, 334 Ill. 168, 165 N.E. 605. See, also, Amherst College v. Ritch, supra, 151 N. Y. at page 323, 45 N.E. 876, 37 L.R.A. 305. The cases of precatory trusts cited by the petitioner are instances where the trust was declared in the will itself and are obviously not in point.

■■ We pass to the 1928 transaction, also relied on by the petitioner to take the case out of the gift tax. The Board has found that the son, discontented, said that he would go to a lawyer to try to break his father's will, that he demanded one-third of the estate income; that his mother, the petitioner, then expressed her willingness to pay him $100,000 a year, with birthday and Christmas presents of $10,000 each, the amount to be reduced if the income from the estate was diminished. The son agreed, whether to forbear with his claims or merely to receive the money does not appear. It is urged that the transaction was a binding contract, the petitioner's promise to make the payments being supported by the son's relinquishment of his claims, and that consequently the petitioner's payment in 1933 was not donative but was in performance of an obligation which she could not have avoided. We are of opinion that the transaction recited in the Board's findings was not a contractual one and imposed no enforceable obligations on the petitioner. The son's threats to break a will probated fifteen years before, threats founded on nothing more than the talk between the decedent and the petitioner already discussed, could not have caused serious alarm to the petitioner. The agreement, involving very large sums of money and to continue for the petitioner's lifetime, was never reduced to writing. The yearly payments and presents were to be reduced in case of diminution of income, but apparently the amount of the reductions was not settled. In view of these facts we are not impressed by the petitioner's argument that the parties were hostile, were dealing at arm's length, and were compromising a bona fide will contest. The more reasonable inference is that the petitioner's expression of a willingness to pay $100,000 a year, with annual birthday and Christmas presents in addition, was motivated by the kinship between the payor and the receiver. It was essentially donative in character, a promise or agreement to make gifts in the future. Kirksey v. Kirksey, 8 Ala. 131; Chase v. Chase, 191 Mass. 556, 78 N.E. 115; Frost v. Frost's Adm'r, 33 Vt. 639; Ludwig v. Ludwig, 170 Wis. 41, 172 N.W. 726. It was so treated by both the petitioner and her son for income tax purposes. The burden was on the petitioner to establish the claimed contract, and the elements of a contract have not been made to appear.

The petitioner refers to Lyeth v. Hoey, 305 U.S. 188, 59 S.Ct. 155, 83 L.Ed. 119,

119 A.L.R. 410, where it was held that payments received by the taxpayer in compromise of his contest of his grandmother's will constituted "property acquired by * * * inheritance" within the meaning of the income tax law and so were not taxable income. The facts here are quite different, and the issue is one of gift tax, not of income tax.

Point is made that the rights of the parties vested in 1909 or at the latest in 1928, prior to the effective date of the 1932 act imposing the gift tax, and that retroactive operation of the act is unconstitutional. In view of our holding that the petitioner was under no obligation to make the 1933 payment, it is unnecessary to discuss whether the transfer of the money would have been subject to gift tax if prior to 1932 she had been legally bound to make the transfer. The petitioner did not show that the payment made by her to her son in 1933 was other than a gift, and the Board was right in holding that the payment was subject to gift tax.

Affirmed.

L. HAND, Circuit Judge (dissenting).

I agree that in fact no trust arose; the phrase, "he left it entirely up to petitioner to do the right thing by the boys", made the whole arrangement too vague. If the taxpayer's will was to be controlled in any way whatever, it was to no greater extent than that if at any time she was disposed not to do what she thought "the right thing", she would overcome that disposition. True, everyone does not always justify his conduct even to himself, but this compulsion appears to me too evanescent and shadowy to support a legal interest. Besides, the evidence is lacking that the testator acted in reliance upon the promise. However, I cannot escape the conclusion that the taxpayer's promise was given in consideration of the son's surrendering whatever rights he got under the putative trust, or as next of kin. He had announced an intention to break the will, on the theory, I suppose, that it was conditional upon recognition of the trust, and there was certainly a dispute in existence; moreover, it was a bona fide dispute. His surrender of his claim was a valid consideration for the compromise. Post v. Thomas, 212 N.Y. 264, 106 N.E. 69; Schnell v. Perlmon, 238 N.Y. 362, 144 N.E. 641, 34 A.L.R. 1023; In re North Babylon Estates, Inc., 2 Cir., 30 F.2d 372; Restatement of Contracts § 76(b). Indeed the Board presupposed as much, but went on the theory that they must weigh the value of the consideration in money or money's worth. That was before Lyeth v. Hoey, 305 U.S. 188, 59 S.Ct. 155, 83 L.Ed. 119, 119 A.L.R. 410, had been decided, and I cannot read the opinion in that case otherwise than as holding that, quoad taxes, promises made in compromise of an alleged right are not in exchange for its surrender, but merely affirm and liquidate it. I cannot see what difference it makes whether the question arises over a gift tax or an income tax, or in what respect the difference of facts between Lyeth v. Hoey and the case at bar makes any difference in the resulting duties. For this reason it seems to me that these payments must be regarded as the income of a trust, or of an "inheritance"; for the son was demanding either one or the other. It does not matter which it was, because in either case the payments were not gifts. I should not be satisfied, however, to dispose of the matter on this record; the Board clearly supposed that quite different considerations governed the result from those which do govern it, as I believe. I would send it back for a rehearing in which more might be learned than appears from the very spare record now before us.